IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINA A. MOTZ,               )
                                 )
       Plaintiff,        )
                                 )
  v.                             )   Civil Action No. 11-477
                                 )
MICHAEL J. ASTRUE,               )   Judge Cathy Bissoon
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
                                 )
       Defendant.        )

## MEMORANDUM AND ORDER

### I. MEMORANDUM

**Background**

      Plaintiff Christina Motz ("Motz") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on September 3, 2008, and September 25, 2008, alleging that she had become disabled on August 2, 2007. (R. at 10, 119, 127). Pennsylvania's Bureau of Disability Determination denied the applications on December 5, 2008. (R. at 56, 61). Motz responded on January 8, 2009, by filing a timely request for an administrative hearing. (R. at 66-67). On May 25, 2010, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Geoffrey S. Casher ("ALJ"). (R. at 23). Motz, who was represented by counsel, appeared and testified at the hearing. (R. at 26-46). Mark L. Heckman ("Heckman"), an impartial vocational expert, also testified at the hearing. (R. at 46-51). In a decision dated July 22, 2010, the ALJ determined that Motz was not "disabled" within the meaning of the Social Security Act ("Act"). (R. at 7-19).

On September 14, 2010, Motz sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 4-5). The Appeals Council denied the request for review on February 17, 2011, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Motz commenced this action on April 7, 2011, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Motz and the Commissioner filed Motions for Summary Judgment on September 16, 2011, and October 17, 2011, respectively. (Docs. 9 & 11). For the reasons that follow, Motz's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the Commissioner's decision will be affirmed.

**Analysis**

Motz suffers from bipolar disorder, depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and poly-substance abuse. (R. at 12). At the hearing, she testified that she had no physical limitations. (R. at 38). The ALJ concluded that Motz had the residual functional capacity to engage in a range of work involving only simple, routine tasks, simple, short instructions, simple work-related decisions, few workplace changes, no production-rate pace work, and only occasional interaction with supervisors, co-workers and members of the general public. (R. at 15). Heckman testified that an individual with Motz's limitations could work as a stock/inventory clerk, private housekeeper or groundskeeper. (R. at 48-49).

Motz worked as an invoice clerk from 2001 through 2004. (R. at 144, 159). She evidently went through a divorce in 2002. (R. at 199, 208). On the evening of September 21, 2002, after being "overcome with stress," Motz deliberately overdosed on Effexor in an attempt to commit suicide. (R. at 206). Shortly thereafter, she regretted her actions and sought help from a friend. (R. at 208). After being stabilized at Latrobe Area Hospital,

Motz was voluntarily admitted for inpatient psychiatric treatment pursuant to 50 PA. STAT. § 7201. (R. at 197). She was discharged on September 27, 2002. (R. at 197-198). At the time of her discharge, Motz was able to contract for her safety and did not need further inpatient treatment. (R. at 198). She was instructed to participate in a partial hospitalization program. (R. at 198).

On August 2, 2007, Motz was terminated from her position as a ward clerk for a nursing home. (R. at 144, 158-159). The termination of her employment was precipitated by her need to miss work on a frequent basis. (R. at 158). Motz consumed large quantities of alcoholic beverages on August 6, 2007. (R. at 221). Her boyfriend contacted emergency medical personnel after finding her to be unresponsive. (R. at 247). After learning that her boyfriend had contacted the emergency responders, Motz overdosed on Paxil and over-the-counter sleeping pills. (R. at 228, 247). She was involuntarily committed to Armstrong County Memorial Hospital ("ACMH") pursuant to 50 PA. STAT. § 7302. (R. at 247). She was discharged on August 10, 2007. (R. at 221). During the course of her hospitalization, Motz expressed a desire to "resume gainful employment" after becoming "behaviorally stable." (R. at 228).

Subsequent to her discharge, Motz sought treatment from Dr. William M. Cseh, a psychiatrist, and Stacy L. Moran ("Moran"), a physician assistant. (R. at 231-239). On March 17, 2008, Motz told Dr. Cseh and Moran that she had poured boiling water on her arm two weeks earlier after thinking about a sexual assault that had been perpetrated by her father. (R. at 234). Motz also indicated that she had deliberately broken her foot with a sledgehammer in July 2007. (R. at 234). Her mood began to improve until April 2008, when her fiancé's daughter was attacked by a dog. (R. at 232).

Dr. Randall S. Orr evaluated Motz on November 13, 2008. (R. at 284-286). Motz complained of increased stress stemming from an abusive relationship with her former fiancé and child-custody disputes with her ex-husband. (R. at 284). She stated that her depression would worsen if she were to return to work. (R. at 285). Dr. Orr increased the dosage of Motz's Cymbalta and Lamictal medications in order to alleviate her depressive symptoms. (R. at 286).

Motz's ex-husband stopped making spousal support payments in 2009. (R. at 336). Because of the ensuing financial difficulties, Motz was unable to pay her rent and was evicted from her apartment in Latrobe, Pennsylvania. (R. at 336). She moved to Indiana, Pennsylvania, to live with her boyfriend. (R. at 336). On August 5, 2009, Motz was transported to the Indiana Regional Medical Center after overdosing on muscle relaxants. (R. at 313-320, 336). While waiting for treatment in the emergency room, Motz "tore a pop can and attempted to slit her wrists." (R. at 336). She was voluntarily transferred to ACMH for inpatient psychiatric treatment on August 6, 2009. (R. at 313, 318). At the time of her transfer, Motz was "very depressed and tearful." (R. at 318). She was discharged on August 10, 2009. (R. at 336).

Dr. Douglas Schiller, a non-examining psychological consultant, opined on December 4, 2008, that Motz had only "moderate" mental limitations, and that she could "meet the basic mental demands of competitive work on a sustained basis." (R. at 291-293, 304). The ALJ accorded "great weight" to Dr. Schiller's assessment in determining Motz's residual functional capacity. (R. at 16). While acknowledging that Motz had been hospitalized a few times for psychiatric treatment, the ALJ observed that her conditions had not necessitated "aggressive medical treatment" or "frequent hospital confinement." (R. at 17).

In support of her Motion for Summary Judgment, Motz contends that the ALJ ignored the records pertaining to her hospitalizations in determining that she was not "disabled" within the

4

meaning of the Act. (Doc. 10 at 4-7). She also asserts that the ALJ failed to evaluate the "opinions" of her treating psychiatrists. (*Id.* at 6). These arguments are unavailing.

In his decision, the ALJ observed more than once that treatment records provided by Motz's treating and examining sources did not contain evidence of disabling functional limitations. (R. at 13-14). He further noted that no treating or examining source had opined that Motz was unable to engage in substantial gainful activity. (R. at 16). A claimant seeking benefits under the Act must present evidence establishing the severity of his or her medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). In order to do so, a claimant must demonstrate that his or her impairments result in specific work-related limitations. *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D. Ky. 2008). Although Motz faults the ALJ for failing to discuss certain portions of her treatment records, she points to nothing in those records suggesting that her functional limitations extended beyond those identified by the ALJ. (Doc. 10 at 4-7). A careful review of the ALJ's decision reveals that he considered Motz's treatment history. (R. at 13-17). The ALJ was not required to discuss evidence that was wholly lacking in probative value. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).

A claimant's need for frequent inpatient treatment is certainly a factor weighing in favor of a finding that he or she is disabled. *Kangas v. Bowen*, 823 F.2d 775, 777-778 (3d Cir. 1987). Nevertheless, an individual seeking benefits under the Act must demonstrate that *both* that her medically determinable impairment (or combination of impairments) *and* her inability to work have lasted (or are expected to last) for a continuous period of at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-222 (2002). While brief hospitalizations sometimes may be indicative of disabling impairments that are more enduring than an individual's period of

5

inpatient treatment, short-term exacerbations of non-disabling impairments are insufficient to establish the existence of a statutory disability. 20 C.F.R. §§ 404.1522, 416.922. Consequently, Motz cannot establish a disability under the Act simply by showing that she was incapable of working while she was receiving inpatient treatment. Motz's brief hospitalizations were triggered by suicide attempts. (R. at 197-202, 206-209, 221-224, 228-230, 247, 313-321, 336). Motz testified at the hearing that her self-destructive impulses were being controlled with medications. (R. at 43-45). Given this testimony, the ALJ did not err in concluding that Motz's impairments would preclude the performance of gainful work during the course of an entire twelve-month period.

The ALJ relied on Motz's testimony at the hearing in determining her residual functional capacity. Motz testified that she did not like to "be around people." (R. at 32). She described a panic attack that she had experienced while attending a concert involving her boyfriend's daughter. (R. at 33). Motz explained that she had stopped exposing herself to crowds in order to reduce the number and severity of her panic attacks. (R. at 40). The ALJ partially credited Motz's testimony by limiting her to work involving only occasional interaction with co-workers, supervisors and members of the general public. (R. at 15). Heckman testified that an individual who was absolutely precluded from having contact with co-workers and members of the general public could work as a private housekeeper, groundskeeper or farm worker. (R. at 49). Thus, Motz's impairments would not have satisfied the Act's "disability" criteria even if the ALJ had *fully* credited her testimony. *Boone v. Barnhart*, 353 F.3d 203, 209-211 (3d Cir. 2003) (claimant is not disabled where jobs consistent with her residual functional capacity exist in significant numbers in the national economy).

6

Motz correctly points out that the ALJ was required to evaluate every medical opinion contained in the record. (Doc. 10 at 6); 20 C.F.R. §§ 404.1527(b), 416.927(b). Every medical opinion, regardless of its source, must be given some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n.5 (3d Cir. 1992). In addition to the testimonial evidence received at the hearing, the ALJ relied on Dr. Schiller's assessment in determining Motz's residual functional capacity. (R. at 16). Motz argues that the ALJ failed to evaluate the "opinions" of her treating sources. (Doc. 10 at 6). The problem with this argument is that it begs the question. No treating source rendered an opinion concerning Motz's ability (or inability) to engage in work-related activities. The opinion of a non-examining medical consultant will rarely constitute "substantial evidence" of a claimant's ability to work when it directly contradicts a well-supported opinion provided by a treating source. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). In the absence of probative evidence suggesting the contrary, however, the ALJ was entitled to rely on Dr. Schiller's consultative assessment in determining that Motz could maintain a full-time job. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

It was incumbent upon Motz to submit evidence of disabling functional limitations. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). She failed to satisfy this burden of production. No treating or examining source has asserted that Motz had functional limitations in excess of those found by the ALJ. Indeed, Motz specifically stated that she had no physical limitations. (R. at 38). Under these circumstances, the Court has no basis for disturbing the Commissioner's final decision denying Motz's applications for DIB and SSI benefits.

7

**Conclusion**

The final decision of the Commissioner is supported by substantial evidence, and it will be affirmed. 42 U.S.C. § 405(g). Accordingly, the Court enters the following:

**ORDER**

It is hereby ORDERED that Plaintiff's Motion for Summary Judgment (**Doc. 9**) is **DENIED**, and Defendant's Motion for Summary Judgment (**Doc. 11**) is **GRANTED**.

March 13, 2012

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record